Albert William BROWN,
Petitioner-Respondent,

v.

Donna Rae BROWN,
Respondent-Appellant.

No. 38975.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 15, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 18, 1978.

Application to Transfer Denied
March 13, 1978.

Devereaux & Stokes, Daniel R. Devereaux, St. Louis, for respondent-appellant.

Shaw, Howlett & Schwartz, Charles M. Shaw, Clayton, for petitioner-respondent.

McMILLIAN, Judge.

Appellant Donna Rae Brown appeals from the judgment and order of the circuit

court of Franklin County, Missouri, overruling her motion to set aside an interlocutory order of dissolution of marriage and making final the interlocutory order. Appellant argues that the trial court abused its discretion in overruling her motion to set aside. Appellant contends that at the time the trial court entered the interlocutory order it had not been fully apprised of all the facts and circumstances of the parties' marriage, specifically that a minor child had been born during the marriage. For the reasons discussed below, we reverse the judgment and remand for further proceedings.

The parties were married on March 20, 1976. A child, Bryan William Brown, was born on August 26, 1976. The parties subsequently separated on September 2, 1976. Respondent Albert William Brown, Jr., filed a petition for dissolution of marriage on September 10, 1976, which stated the facts of his marriage to appellant, the separation, that the marriage was irretrievably broken, and that no minor children had been born of the marriage. (At this time both parties were eighteen years of age.)

At the trial on December 7, 1976, respondent was present and represented by counsel. Appellant was neither present nor represented by counsel. Appellant was personally served on September 14, 1976, but nevertheless made no response. The trial court entered a default against her and then proceeded. Respondent testified briefly as to the facts of his marriage and separation and that there were no minor children born of the marriage. The trial court made a preliminary finding that the marriage was irretrievably broken with no reasonable likelihood that it could be preserved and entered an interlocutory order of dissolution of marriage. The trial court also found there were no minor unemancipated children and made no orders concerning the assets and liabilities of the parties or maintenance.

Statutory notice was sent to appellant that the interlocutory order would become final within ten days (on December 20,

1976) unless she filed a written objection thereto. § 452.320(1), RSMo 1977.[1] Counsel for appellant then filed a "Motion to Set Aside the Interlocutory Order" asserting the trial court had not been fully apprised of the facts and circumstances of the parties' marriage, specifically that a minor child had been born during the marriage. Appellant also filed an answer stating that a child had been born of the marriage and denying the marriage was irretrievably broken.

Both parties were present and represented by counsel at the hearing on the motion to set aside the interlocutory order on February 15, 1977. The trial court noted that the purpose of the hearing was to address the question whether appellant should be allowed to raise the issue of the child after such a delay rather than to determine paternity. Nevertheless, much of the testimony at the hearing was directed at the question of paternity. Briefly, appellant testified that respondent was the father of her child and the child was born after the marriage. Respondent testified that although at the time of the marriage he knew appellant was pregnant and the child was born after the marriage, he did not believe the child was his. He believed that appellant's former boyfriend was the father.

As noted above, the trial court was primarily interested in the reasons for appellant's delay and approached the motion to set aside the interlocutory order as a motion to set aside a default judgment. Appellant testified that the delay was the product of confusion and misunderstanding on her part. Appellant erroneously assumed that her husband's attorney would contact her again, that she required the appointment of a guardian, and that her husband's attorney would correct, at her request, the statement in the petition that there were no children born of the marriage. When appellant received notice of the interlocutory order she immediately contacted her present counsel and filed the motion to set aside.

---

1. Section 452.320 has been repealed and re-enacted omitting the 10 day notice requirement.

H.B.No. 470, approved June 8, 1977, effective 6 September 1977.

The trial court noted that appellant's confusion and age had probably contributed to the default, but nonetheless found that appellant's inaction had precluded her from further relief and overruled the motion to set aside the interlocutory order. The trial court also noted that appellant had been aware of the proceedings and properly served with process and that no actual fraud had been perpetrated upon her. The interlocutory order of dissolution was made final and entered on February 15, 1977. This appeal followed.

 Our standard of review in this court-tried case is defined by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32; *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 856 (Mo.

App. 1977); *In re Marriage of Carmack*, 550 S.W.2d 815, 817 (Mo.App. 1977). Under this standard, we reverse because the trial court has erroneously applied the law and remand for further proceedings. Under our analysis, § 452.320 of the new dissolution of marriage law[2] requires the trial court to hold a hearing on whether the marriage is irretrievably broken when the absent party, after receiving notice of the interlocutory finding, does file an objection within ten days, even though that party did not before deny that the marriage was irretrievably broken. *Id.* § 452.320(1), (2). At the hearing the petitioning party must then satisfy the trial court of one of the five factors listed in the dissolution law. *In re Marriage of Capstick*, 547 S.W.2d 522, 524 (Mo. App. 1977).

 From the record and the briefs it is clear that the trial court and the attorneys for both parties approached the motion to set aside the interlocutory order as a

2. 452.320 Finding that marriage is irretrievably broken, when—notice—denial by a party, effect of—alternate findings

"1. If both of the parties by petition or otherwise have stated under oath or affirmation that the marriage is irretrievably broken, or one of the parties has so stated and the other has not denied it, the court, after considering the aforesaid petition or statement, and after a hearing thereon shall make a finding whether or not the marriage is irretrievably broken, and where one of the parties has not denied it the court shall cause to be deposited in the United States mail an envelope, certified or registered, deliver to addressee only, return receipt requested, and with postage prepaid, enclosing a notice to the party not denying that absent objection from said party being filed within ten days after date of mailing that a finding the marriage is irretrievably broken and an order of dissolution of the marriage may be entered of record. The failure of such party to receive such notice shall not impair the power of the court to enter an order dissolving the marriage or the validity of such an order; but

"2. If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation, and after hearing the evidence shall

"(1) Make a finding whether or not the marriage is irretrievably broken, and in order for the court to find that the marriage is irretriev-

ably broken, the petitioner shall satisfy the court of one or more of the following facts:

"(a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;

"(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

"(c) That the respondent has abandoned the petitioner for a continuous period of at least six months preceding the presentation of the petition;

"(d) That the parties to the marriage have lived separate and apart by mutual consent for a continuous period of twelve months immediately preceding the filing of the petition;

"(e) That the parties to the marriage have lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition; or

"(2) Continue the matter for further hearing not less than thirty days or more than six months later, or as soon thereafter as the matter may be reached on the court's calendar, and may suggest to the parties that they seek counseling. No court shall require counseling as a condition precedent to a decree, nor shall any employee of any court, or of the state or any political subdivision of the state, be utilized as a marriage counselor. At the adjourned hearing, the court shall make a finding whether the marriage is irretrievably broken as set forth in subdivision (1) above and shall enter an order of dissolution or dismissal accordingly."

motion to set aside a default judgment. The trial court was most concerned with why appellant had delayed, because in order to justify setting aside a default judgment, the defaulting party must show a good reason or excuse for default and a meritorious defense. *E.g., Clinton v. Clinton*, 444 S.W.2d 677, 681 (Mo.App. 1969), citing *Whitledge v. Anderson Air Activities*, 276 S.W.2d 114, 116 (Mo.1955). We believe, however, that the trial court erred in treating the interlocutory order as a default judgment and in holding the hearing on the motion to set aside. When one of the parties is absent, the preliminary finding of the trial court that the marriage is irretrievably broken is an interlocutory or temporary finding, as provided in § 452.320(1), RSMo 1977. The interlocutory order merely establishes that unless some event occurs, in this case the filing of a written objection, the interlocutory order will become final at the expiration of a certain period, in this case ten days. *E.g., State ex rel. Great American Ins. Co. v. Jones*, 396 S.W.2d 601, 603 (Mo. banc 1965).

In this case appellant filed an objection within ten days of receipt of notice of the interlocutory order, in the form of a motion to set aside and an answer.[3] Therefore, in this posture of the case, the trial court should have held a hearing on the question whether the marriage is irretrievably broken, § 452.320(2) RSMo 1977. Where no objection is filed within the statutory ten-day period, the interlocutory order of dissolution of marriage may then be entered of record. At this point the final decree of dissolution is a true default judgment inasmuch as there has been no answer filed nor any objections to the interlocutory decree. A motion to set aside the default judgment would then be appropriate, *e.g., In re Marriage of Hanners*, 549 S.W.2d 941 (Mo.App. 1977). Then the trial court would have been perfectly correct in the exercise of its discretion as to whether appellant had

shown a meritorious defense and good reason or cause for defaulting, *Id.* at 942. But this is not the instant case.

In our opinion the statutory ten-day period serves as a check on the dissolution of marriages in cases where one party is absent by giving that defaulting party a last chance to object. We hold that the legislature by its enactment of § 452.320(1) because of its deep concern for the maintenance of the family unit, has declared the following to be the public policy of our state: Where a spouse is in default by failing to file an answer to the original petition that sought a dissolution of the marriage, the trial court is authorized to enter an interlocutory decree provided it finds the marriage to be irretrievably broken. Next, it becomes the duty of the trial court to notify the spouse in default as provided in § 452.320(1). If, on the other hand, the spouse in default files an objection to the interlocutory decree alleging that the marriage is not irretrievably broken, the trial court then must hold a hearing and make findings as provided in § 452.320(2).

Judgment reversed and remanded for further proceedings consistent with this decision.

CLEMENS, P. J., and SMITH, J., concur.

---

3. In the present case appellant's answer specifically denied that the parties' marriage was irretrievably broken. Therefore our holding is restricted to cases in which the defaulting spouse denies the marriage is irretrievably bro-

ken. We distinguish those cases in which the defaulting spouse's objection is to some other provision of the interlocutory decree, such as child custody, maintenance or property division.